**WHITACRE, Plaintiff-Appellee, v. HOFFMAN, ET, Defendants-Appellants.**

Ohio Appeals, Seventh District, Columbiana County.

No. 652.   Decided May 12, 1947.

F. E. Hunter, Alliance, for plaintiff-appellee.

W. F. MacQueen, Niles, for defendants-appellants.

494

[black redaction bar]

## OPINION

By PHILLIPS, J.

This case is before us on questions of law and fact from a judgment of the court of common pleas of Columbiana County entered for plaintiff in his action to compel specific performance of a contract to convey to him land situated in that county.

Plaintiff's motion to dismiss defendant's appeal on the ground that his "notice of intention to appeal" is not sufficient to satisfy the requirements of §12223-4 GC, is overruled. See **In Re: Guardianship of Wisner, 148 Oh St 31.**

By the terms of the contract dated "October ——, 1942", and in consideration of the sum of $10.00 paid by Oscar V. Geckler to and received by Homer H. Hoffman, Kathryn West, Helen Hoffman, Margaret Hoffman, Tressie Bartchy, Keith D. Hoffman and Clayton L. Hoffman, designated therein as sole heirs of H. W. Hoffman, deceased, they agreed to furnish Geckler an abstract "showing good title to said property free and clear from all incumbrances whatsoever save taxes and assessments for 1942", and upon receipt of such abstract by Oscar V. Geckler and payment by him of the additional sum of $5,000 to convey the land described therein to him and put him in possession thereof on or before the fifteenth day of October, 1942.

Kathryn West, whom the evidence discloses was the only one of the defendants who talked with Oscar V. Geckler prior to the execution of the contract, wrote him a letter on October 2, 1942, in which she said, among other things:—

"I am mailing you the sales contract which you can see we have all signed.

"There has been a quit claim deed sent to a beneficiary of Frank Hoffman's Estate, (his son Frederick) signing his share (a one-fourth interest) in the farm to the widow (defendant Helen Hoffman). * * * Our attorney says that all the rest of us could render a warranty deed and receive payment and the value of the share in question could be put in a bank of your choice, in escro (sic), and when the quit claim deed arrived it would, upon being presented to the bank, be the means of

releasing the money. This will enable you to get possession much sooner than to wait on the quit claim before rendering the warranty deed. We · have started the new deed and abstract. Hope to get this ready to consummate as soon as possible."

In response to a letter previously written to her by Oscar Geckler, Kathryn West wrote him a second letter on November 17, 1942, in which she referred to an abstract of title of such land and said:—

"However we have discovered that certain obstacles must be overcome which are in addition to these already mentioned. One of these obstacles has to do with the estate of our brother Glenn who died some years ago. His estate is now in process of administration and the attorney representing the estate is away on an extended trip so that we are unable to secure definite information. We do know that one of Glenn's children is still a minor and will not be of age for at least two years. * * * As much as I wanted to see that farm sold it is beginning to look impossible to grant a clear title."

It is observed that such letter was written more than a month after the contract by its terms was to have been completed.

In December, 1942, Kathryn West advised Oscar Geckler by letter that she and her associate signers of such contract could not deliver a merchantable title to the land described in the contract to him and by reason thereof they would not complete the sale of that land in accordance with the terms of the contract.

On July 12, 1943, all of the owners of any interest in the land described in the contract, except those to whom reference is made hereinafter, conveyed to the Ohio Public Service Company an electric power line easement thereover.

By virtue of land sale proceedings had in the estate of Glenn Hoffman, whose heirs did not join in the original grant of such easement, his administrator sold his interest in such land to Alys N. Hoffman, daughter of Glenn Hoffman, and on September 3, 1943, Margaret C. Hoffman, his widow, and Alys N. Hoffman likewise conveyed an electric power line easement across such land to the Ohio Public Service Company on August 12, 1943.

On June 13, 1944, Alys N. Hoffman conveyed her interest in such land to Margaret C. Hoffman, thus merging the in-

terest of Glenn C. Hoffman therein in Margaret C. Hoffman; and on April 13, 1944, Helen Fobes Hoffman conveyed her interest in such land to Homer H. Hoffman.

The contract to which reference has been made was recorded in Columbiana County on September 14, 1944, and on December 27th of the same year Oscar V. Geckler assigned it to Charles R. Whitacre, the plaintiff herein.

On February 3, 1945, and May 15, 1945, respectively, Tressie Bartchy and Frederick G. Hoffman, a son of Frank Hoffman, conveyed their interests in such lands to plaintiff.

Kathryn West testified that she informed Oscar V. Geckler about her two deceased brothers, but did not remember talking with him about the minor child of Glenn Hoffman, to whom she referred in her letter to him dated November 17, 1942.

If Margaret. Hoffman, the widow of Glenn Hoffman, knew, and she is charged with knowing, that by reason of the minority of her child, to whom reference was made in Kathryn West's letter of November 17, 1942, to Oscar v. Geckler, she could not convey clear title to Glenn Hoffman's share of such land to him she should not have been a party to the contract.

It is clear to us that by signing the contract Helen Hoffman, widow of Frank Hoffman, deceased, and Margaret Hoffman, widow of Glenn Hoffman, deceased, led Oscar Geckler to believe, and by the terms of the contract he had the right to assume, that their interests therein were unencumbered; and that he was first informed of such incumbrances when he received Kathryn West's letter of October 2, 1942, which was written after the contract dated "October ——, 1942," was executed; and we find no evidence in the bill of exceptions submitted to us for review convincing us of the existence of the condition precedent urged by counsel for defendants that "some of the owners signed the contract upon condition that all would sign, otherwise, the contract was unenforceable".

By the clear, unambiguous, and undisputed terms of the simple contract of sale, defendants agreed to furnish an abstract of title to the premises showing such premises to be, as already stated, "free and clear of all incumbrances whatsoever save taxes and assessments for 1942"; and upon delivery of such abstract together with a warranty deed to such premises to him Oscar V. Geckler agreed to pay the balance of the purchase price amounting to $5,000. There is evidence that Oscar V. Geckler and plaintiff, his assignee of such contract, repeatedly endeavored to obtain such instruments and that they offered to pay such amount to defendants, who openly refused to accept it.

"In general, the rules of equity concerning the necessity of an actual tender are not so stringent as those of the law. The following special rules seem to be settled: 1. An actual tender by the plaintiff is unnecessary when, from the acts of the defendant or from the situation of the property it would be wholly nugatory. Thus if defendant has openly refused to perform, the plaintiff need not make a tender or demand; it is enough that he is ready and willing, and offers to perform in his pleading; also, if at the time fixed the vendor is unable to convey, by reason of a defect in his title, unless time was essential." Pomeroy's Equity Jurisprudence, fifth edition, volume 4, page 1051, section 1407a.

The foregoing authority supports our conclusion that considering the evidence in this case it was unnecessary for either Oscar V. Geckler or plaintiff to make, if indeed they did not make, an actual cash tender of the balance of the purchase price to defendants, or any one of them, as counsel for defendant urges they should have done.

Without referring to the evidence further we are satisfied that Oscar V. Geckler and plaintiff made consistent and continuous efforts to induce defendants to convey the lands in question in accordance with the terms of the contract; and that plaintiff filed his action for specific performance on February 26, 1945, only when he was finally convinced that defendants would not specifically perform the conditions of the contract to be performed by them, of which contract he was assignee, which efforts in our opinion purge him of the charge of laches lodged against him by defendants.

Defendants in this case cannot be excused from specifically performing the terms of the contract because they were unable to furnish a clear title to the lands described in the agreement of sale, for while the plaintiff will not be compelled to complete the contract, unless the title is free from any reasonable doubt, yet he may elect to take a defective and partial title, and be entitled to a specific performance of the contract so far as it can be enforced. See Pomeroy's Equity Jurisprudence, fifth edition, section 1405a, pages 1044-1045, and section 1405b, page 1047.

Without further word we conclude plaintiff is entitled to specific performance of the contract dated "October —, 1942".

Plaintiff acquired a 3/14th interest in the premises described in the contract by purchase from Tressie Bartchy and Frederick Hoffman, as stated elsewhere herein; and it is

conceded Clayton Hoffman, Keith Hoffman, Margaret Hoffman and Kathryn West each own a 1/7th interest therein; that Homer Hoffman owns a 3/14th interest; that the balance of the contract purchase price is $5,000; and there is undisputed evidence that the Ohio Public Service Company paid $1200 for the electric power line easement across the lands described in the contract, to the benefit of which we hold plaintiff is entitled and to which easement such lands will be subject as a risk of his ownership thereof.

"The effect of an executory contract for the sale of land, in working an equitable conversion, and in clothing the purchaser with an equitable estate in the land, and the vendor with an equitable ownership of the purchase price, has already been described. As soon as the contract is finally concluded, although it is wholly executory- in form, these rights and estates become fixed and vested. It follows, therefore, that the purchaser, being the equitable owner, is entitled to all the. benefits and assumes all the risks of ownership." Pomeroy's Equity Jurisprudence, fifth edition, section 1406, page 1049.

Like the trial judge, as part of our finding we proceed to distribute to the respective defendants the balance of the purchase price of the lands described in the contract, whether or not we are required to do so, in this case, and hold that Clayton Hoffman, Keith Hoffman, Margaret Hoffman and Kathryn West are each entitled to receive from the sale of such lands $714.29, which is 1/7th of $5,000, the balance of the purchase price of the lands described in the contract, less $171.43, which is 1/7th of $1200, the amount paid by the Ohio Public Service Company for the electric power line easement across such lands, which each of them were entitled to receive and which we assume each of them did receive, and to which latter amount we hold plaintiff is entitled to credit; and Homer Hoffman is entitled to receive $1071.44, which is 3/14ths of the balance of such purchase price less $257.15, which he was entitled to receive and which we likewise assume he did receive, and which is 3/14ths of the purchase price of the electric power line easement, to which latter amount we find plaintiff is likewise entitled to credit.

Therefore defendants Clayton Hoffman, Keith Hoffman, Margaret Hoffman and Kathryn West are each ordered to execute and deliver to the plaintiff their warranty deed conveying their 1/7th interest in the property described in con-

tract to plaintiff when each receives from him the sum of $542.86; and defendant Homer Hoffman is ordered to execute and deliver to plaintiff warranty deed conveying his 3/14th interest in such property when he receives from plaintiff the sum of $814.29.

The costs are ordered taxed against defendants, and a journal entry drawn in accordance with our finding may be presented.

CARTER, PJ, NICHOLS, J, Concur in Judgment.