In re Appropriation of Easement for Highway Purposes:
Director of Highways, Appellee, *v.* Bennett et al.,
Appellants.

(No. 5598—Decided December 3, 1962.)

*Messrs. Cline, Bischoff & Cook,* for appellants.
*Mr. Mark McElroy,* attorney general, and *Mr. Walter J. Krasniewski,* for appellee.

Fess, J.  This is an appeal on questions of law from a judgment for costs rendered against appellants upon the granting of a motion made on behalf of the Director of Highways for the withdrawal of a juror and a mistrial on account of a remark made by counsel for appellants during his opening statement.

The proceedings were instituted by the filing in the Common Pleas Court of a resolution and finding of the director stating the necessity for the appropriation of the described premises naming as owners Rose M. Bennett, Virginia St. John, First Federal Savings & Loan, James G. Zerva and the Treasurer of Lucas County, together with the deposit of the sum of $18,000 comprising $4,000 as the value of the land and $14,000 as the value of the structure to be taken.

Thereafter, Rose M. Bennett and Virginia St. John filed their joint petition stating their intention to appeal from the amount fixed by the director, in which they set forth, *inter alia,* that on March 1, 1956, Rose M. Bennett and her decreased husband as vendors entered into a land contract with Silvio St. John (since deceased) and Virginia St. John as purchasers of the premises in question for the sum of $33,000 and that pursuant to the terms of said contract there remained a balance due thereon in the sum of $20,251.98 as of September 5, 1961. Thereafter, the Director of Highways filed a motion to strike from the petition on appeal all reference to the aforesaid sale on the ground that the same was irrelevant and immaterial, which motion was overruled several weeks prior to the trial.

During the course of his opening statement counsel for the landowners referred to improvements made on the premises by the Bennetts, its subsequent sale to the St. Johns, and stated:

"Now, the evidence will further show that this purchase and sale of the property took place in February of '56, and the evidence from the witness stand here will show that in that purchase and sales agreement the price paid by Mrs. Bennett [*sic*] was $33,000 paid to Mrs. Bennett, by Mrs. St. John."

Upon objection interposed by counsel for the director, the jury was excused and after argument of counsel upon the objection the court said:

"At the start of the case I had counsel agree that the legal title—and I want to say that the landowner did not want to be bound by that, that they were not the owners, only that it stipulated that the legal title was in the name of Rose M. Bennett. By mentioning the price that Mrs. St. John had agreed to pay for this property, in the sum of $33,000, I think that you have squarely brought Mrs. St. John's interest into this case, which I think it is improper to do so at this time; that the only thing that the jury can find is the reasonable market value to Mrs. Bennett. I am afraid that no matter how skillfully that I could charge a jury that the sum of $33,000 would become so firmly embedded in the minds of the jury, when it should not be there, because the interest of Mrs. St. John is not to be determined at this time, but only the fair market value as to Rose M. Bennett. Therefore I am going to grant the motion for a

mistrial and order a juror withdrawn and a mistrial declared, at the costs of the landowner. That is all I can do.''

Thereupon, the jury returned and, after explaining his action, the jury was discharged. Thereafter, a journal entry was approved and filed adjudging that the jury be dismissed and a mistrial declared at the costs of the landowners and judgment rendered against them for costs to date. As indicated above, the instant appeal is taken from this judgment for costs.

Ordinarily, declaration of a mistrial and withdrawal of a juror and continuance of a cause for further trial without entry of judgment for costs would constitute such an error as would be preserved for assignment incident to an appeal from the final judgment in the cause. But in the instant case judgment for costs accrued to date of the declaration of the mistrial was entered against the landowners, which, in our opinion, constituted an order affecting a substantial right affording them the right to appeal therefrom as a final order. We have, therefore, overruled the motion made by the Director of Highways to dismiss the appeal on the ground that it is not a final order.

It is well recognized that the conduct of a trial is to a large extent under the control of the trial judge upon whom rests the primary responsibility and duty to see that the trial proceeds in an orderly and proper manner. 52 Ohio Jurisprudence (2d), 496, Section 15. And the judge is clothed with adequate powers and is under the duty of seeing that, in the trial of a cause before him, substantial justice is administered as between the parties thereto and that the cause be tried in accordance with established principles of law and practice. Incident to such powers he has a duty to restrain counsel from making improper remarks during the course of a trial or in the argument of a case.

Although the right of a party to be heard by his counsel in the trial of a case cannot be questioned and a wide range of discussion is to be allowed, that range is not unlimited. 53 Ohio Jurisprudence (2d), 189, Section 273. With regard to argument of counsel, as distinguished from an opening statement, in general it may be said that a liberal freedom of speech and a wide range of discussion is allowed, but the extent of such freedom rests to a large extent in the discretion of the court. 53 Ohio Jurisprudence (2d), 168, Section 257. Many illustra-

tions are found in the cases defining what constitutes misconduct during argument of counsel justifying the court in withdrawing remarks from the jury, and in flagrant cases the declaration of a mistrial. But ordinarily with or without objection of counsel upon the making of an improper remark of counsel during argument, it is sufficent for the court to admonish counsel and instruct the jury to disregard such remarks. Should counsel persist in such improper conduct, the court is clothed with adequate authority to declare a mistrial.

With regard to opening statements of counsel (in contrast to argument), the very purpose of such statements is to enable the attorneys to tell the jury what they expect to prove. And it is said that the opening statement is an advance exhibit of the legal nature of the controversy and its salient peculiarities, and enables the judge, jury, and opposite counsel to apprehend his adversary's case and to understand the drift and bearing of each step and each offer of proof as it subsequently occurs. 52 Ohio Jurisprudence (2d), 540, Trial, Section 59. A brief summary or outline of the substance of the evidence intended to be offered, with requisite, clear and concise explanations, is not only proper but requisite in order to prevent a judgment adverse to such party upon failure to state a case for recovery.

It is generally held that statements by counsel that certain evidence will be introduced are not improper if made in good faith and with reasonable ground to believe that the evidence is admissible, even though the intended proof referred to is afterward excluded. 53 American Jurisprudence, 358, Trial, Section 456. See, also, 88 Corpus Juris Secundum, 311 Trial, Section 161.

Thus, in *Akron Taxicab Co.* v. *Dawson,* 12 Ohio Law Abs., 316, it was held that a remark of counsel in his opening statement was not prejudicial merely because evidence tending to prove such statement was inadmissible and was rejected when later offered. In that case when counsel made the statement and objection was made thereto the trial court announced that the purpose of the statement was to enable the attorneys to tell the jury what they expected to prove and admonished the jury as follows:

"Whether or not it is admissible will be determined by this court at a proper time, and the jury is instructed now, as you

will be later instructed, that the only purpose of this statement is to tell what the attorneys expect to prove in this case. When you consider this case, you will consider only the evidence you hear from the witness stand and apply the law that this court gives you to the evidence that you hear from the witness stand, and upon that determine your decision. You will only decide the case on the evidence.''

In *Maggio* v. *City of Cleveland* (1949), 151 Ohio St., 136, the Supreme Court holds:

"1. In keeping with subdivisions 1 and 2 of Section 11420-1, General Code [Section 2315.01(A), Revised Code], the function of an opening statement by counsel in a jury trial is to inform the jury in a concise and orderly way of the nature of the case and the questions involved, and to outline the facts intended to be proved.

''2. Counsel should be accorded latitude by the trial court in making his opening statement, but when he deliberately attempts to influence and sway the jury by a recital of matters foreign to the case, which matters he knows or ought to know cannot be shown by competent or admissible evidence, or when he makes a statement through accident, inadvertence or misconception which is improper and patently harmful to the opposing side, it may constitute the basis for ordering a new trial or for the reversal by a reviewing court of a judgment favorable to the party represented by such counsel.''

In that case, in his opening statement to the jury, able counsel for the plaintiff deliberately made reference to the unfortunate domestic situation of the plaintiff resulting from the accident when, as remarked by the court in its opinion, even a cursory investigation of cases, previously decided by the court before trial, would have revealed that the injection of such evidence or reference thereto in the opening statement had been definitely held objectionable and inadmissible in that the only purpose of such testimony would be to arouse the sympathy of the jury and thus increase the amount of a damage award beyond justification.

In reaching its conclusion the court did not specifically hold that upon objection and motion for a mistrial the trial court should have declared a mistrial, but held that because of the objectionable and improper matter included in the opening

statement, which could well have been a factor contributing to the large amount of the damage award, the defendant's motion for a new trial should have been sustained.

It is readily apparent that the circumstances present in the instant case are different from those in the *Maggio case*. The market value is the chief criterion for determining the value of land taken in an eminent domain proceeding, and although the admission and exclusion of evidence as to the value of the land rests to a large extent in the discretion of the trial court, nevertheless, evidence which is legally competent, relevant and material incident to the determination of the market value is admissible. Thus, as a general rule, evidence of sales of other property in the vicinity is competent in such proceedings when it is shown that the sales were had at or near the time of the fixing of the value of the property; that the properties were similar in their situation, relative position and other circumstances relating to value; and that such sales were fair and in the open market. 19 Ohio Jurisprudence (2d), 584, Section 163. The price which an owner has paid for the property does not fix its value, nor does a former valuation of the land determine its present value, but both are admissible as tending to show present value provided only that the transaction was not so far removed in point of time from the appropriation as to make a comparison unjust or impossible. *Ohio Turnpike Comm.* v. *Ellis* (1955), 164 Ohio St., 377. As stated by the Court of Appeals in the *Ellis case,* 70 Ohio Law Abs., 417, 425, it would be difficult to fix an arbitrary rule as to the period of time within which the purchase price of such property should be either admitted or excluded. And consequently, the better rule seems to be to admit such evidence if in the sound discretion of the trial court the date of purchase is not so remote in time, and conditions with respect to the property have not changed so materially as to destroy the evidential value.

After all, the weight to be given such evidence, including its remoteness as to time and change of circumstances from date of sale to the time of trial, are matters to be considered by the jury under appropriate instructions.

The instant case is to be further distinguished from the *Maggio case* on the ground that so far as the record discloses in the instant case the remark of counsel was made upon a bona

fide belief that evidence of the purchase price of the property paid by the St. Johns was admissible. As previously stated herein, the motion of the director to strike the allegation from the petition on appeal had been overruled which, naturally, would lead counsel into the belief that evidence could be introduced to support such allegation. As remarked by the Supreme Court in the *Ellis case, supra,* at page 387, conceding that the statement was incorrect and erroneous and that the court should have, upon request, eliminated it from the consideration of the jury, there is no indication that it was malicious or deliberately made. The Supreme Court also expressed the opinion that the statement was not of such a serious or consequential nature as to require the drastic course of declaring a mistrial.

In the course of the colloquy between the court and counsel it appears that the court proceeded on the theory that only the holder of the record title could participate in the trial of the appeal and that the interest of Mrs. St. John as the purchaser of the premises is not to be determined upon the appeal, and that she could not participate in the trial.

Section 5519.02, Revised Code, merely provides that ''if any *owner of property* appropriated'' is not satisfied with the amount fixed by the director, such owner may file a petition setting forth an intention to appeal from the amount so fixed. No distinction is made in the statute between a legal or an equitable owner.

Traditionally, it has been held that to the extent that the purchase money has been paid, the vendee, under a land contract, is the beneficial or equitable owner thereof. In *Coggshall* v. *Marine Bank Co.* (1900), 63 Ohio St., 88, Spear, J., remarked: ''That, in such case, the vendee is the beneficial owner to the extent of the purchase money paid, and that the vendor holds the legal title in trust for the purchaser, subject to the duty of conveying the legal title on compliance with the terms of the contract by the vendee, is, we suppose, not disputed anywhere.'' The fact that the case also holds that the interest of the vendor is not that of a mere naked trustee for the vendee, and that he holds not only the legal title, but a beneficial estate in the lands to the extent of unpaid purchase money subject to levy by attachment on the land, does not detract from the quoted portion

of the opinion. See, also, McDermott's Ohio Real Property Law and Practice (2 Ed.), 740 and 742; *Berndt, Admr.,* v. *Lusher,* 40 Ohio App., 172, 176; *Whitacre* v. *Hoffman,* 50 Ohio Law Abs., 493, 498; 4 Pomeroy's Equity Jurisprudence (5 Ed.), 1049; 11 Ohio Jurisprudence (2d), 656.

"The terms 'owner' and 'owning' [as employed in a statute] depend somewhat for their signification upon the connection in which they are used. 'To own' is defined 'to hold as property; to have a legal or rightful title to; to have; to possess,' and an 'owner' is 'one who owns; a rightful proprietor.' An owner is not necessarily one owning the fee simple, or one having in the property the highest estate it will admit of. One having a lesser estate may be an owner, and indeed, there may be different estates in the same property vested in different persons and each be an owner thereof." *Baltimore & Ohio Rd. Co.* v. *Walker* (1888), 45 Ohio St., 577, 585. See, also, annotations in 2 A.L.R., 778, and 95 A.L.R., 1085, dealing with the subject of scope and effect of term "owner" in statutes relating to real property including those relating to condemnation proceedings. With regard to appropriation proceedings, see, also, 29 Corpus Juris Secundum, 1116; *Delancey & Stockton Corp.* v. *Reliable Improvement Co.* (1943), 134 N. J. Eq., 71, 33 A. (2d), 848; *Mezza* v. *Beiletti* (1947), 161 Pa. Super. Ct., 213, 53 A. (2d), 835; *State Highway Commr.* v. *Gibson* (1944), 308 Mich., 276, 13 N. W. (2d), 617; *Mesich* v. *Board of County Commrs. of McKinley County* (1942), 46 N. M., 412, 129 P. (2d), 974; *In re Huie* (1959), 22 Misc. (2d), 1028, 192 N. Y. Supp. (2d), 620, upon authority of *Clarke* v. *Long Island Realty Co.* (1908), 126 App. Div., 282, 110 N. Y. S., 697 holding that a purchaser under an executory contract of purchase has the equitable title; the vendor holding the legal title merely as security for the payment of the purchase money; and also holding that a contract for a conveyance was not abrogated by the acquisition of title to the land by another under the right of eminent domain; the damages awarded belonging to the purchaser subject to the vendor's lien, and the vendor receiving them as the purchaser's trustee, and the award becoming in legal effect, as between the vendor and purchaser, the subject of the conveyance.

Frequently, the purchaser under a land contract may have paid down more than one-half the purchase price or may have

made substantial improvements upon the premises resulting in his having a more substantial interest therein than the vendor. In our opinion, to so construe the statute as to exclude the vendee from participating in the proceedings would violate the constitutional inhibition against taking property without compensation. See concurring opinion of Hart, J., in *Sowers, Supt.*, v. *Schaeffer*, 152 Ohio St., 65, 70.

We are not unaware of decisions of the Supreme Court holding that a proceeding to appropriate property for a public use is essentially in rem and that in the event that there are several interests or estates in the parcel of real estate appropriated, the proper method of fixing the value of each interest or estate is to determine the value of the property as a whole, with the later apportionment of the amount awarded among the several owners according to their respective interests, rather than to take each interest or estate as a unit and fix the value thereof, separately. *Sowers, Supt.*, v. *Schaeffer, supra* (152 Ohio St., 65); *Sowers, Supt.*, v. *Schaeffer*, 155 Ohio St., 454; *Queen City Realty Co.* v. *Linzell, Dir.*, 166 Ohio St., 249; *Thormyer, Acting Dir.*, v. *Joseph Evans Ice Cream Co.*, 167 Ohio St., 463; *Board of County Commissioners* v. *Thormyer, Acting Dir.*, 169 Ohio St., 291, 75 A.L.R. (2d), 1373.

In the first *Schaeffer* case the court rejected the contention of the leaseholders that the blanket offer in the certificate of appropriation for all the property and interests therein sought to be appropriated was too general and indefinite and that separate offers in separate amounts should have been made to the owners in fee and to those holding leasehold and lesser interests. Such holding was reaffirmed in the second *Schaeffer* case (155 Ohio St., 454).

Whether the principle applied to leasehold interests should be applied to a case involving the respective interests of the vendor and vendee is doubtful. But we point out that in the second paragraph of the syllabus in the second *Schaeffer* case the court says that where there are several different interests or estates in the property, it is proper on direct examination to admit testimony as to the value of the individual structures, buildings and improvements on the property as well as the rental values thereof, the business conducted thereon and all special features relative to the property which may

either enhance or lessen its value. And in the fourth paragraph of the syllabus that ordinarily, in fixing compensation for property taken the total award should not be less than the fair market value of the property but it cannot exceed the fair market value of the property as a whole, even though there are various interests or estates in the property. In the *Evans Ice Cream Co. case, supra* (167 Ohio St., 463), the court holds that it is error to permit an owner-lessor and a lessee to proceed as separate parties in the presentation of their respective interests and also to permit the jury to determine the lessee's compensation for his interest as a separate item in the total compensation for the land and building taken.

The holder of a leasehold interest in property is not the owner thereof within the contemplation of Section 5519.02, Revised Code. But under the statutory provision that *any owner* may prosecute an appeal it is questionable whether a like ruling should be made in the instant case. Furthermore, as indicated in the dissent of Judge Hart in the second *Schaeffer case* (155 Ohio St., 454, 464), predicated on his concurring opinion in the first *Schaeffer case,* since the owner is entitled to full compensation for the property taken, otherwise, constitutional requirements would not be met, resulting in the taking of property without due process of law.

In 18 American Jurisprudence, 865, Eminent Domain, Section 231, it is stated that

"Since in equity a vendee in possession of land under a contract of purchase is regarded as the owner, the general rule is that if the land is taken for public use under the power of eminent domain he, and not the vendor, is entitled to the award."

The authority for such statement is *Bailey* v. *Osborn* (1910), 80 N. J. L., 333, 78 A., 9, 22 Ann. Cas. (1912A), 454. In its opinion in the *Bailey case* the court remarks that the word "owners" as used in the statute did not mean merely the owners of the fee and also states that "if the act should be construed to authorize the taking of land in which the plaintiff [purchaser] had an interest, although his estate might be, as in this case, only an equitable estate, without compensation to him, the whole scheme of the act would be rendered invalid, for under our constitution it is essential to the validity of any

statute authorizing condemnation that it should provide for compensation." The annotation in Ann. Cas., cites cases from Arkansas, Illinois, Iowa, Kansas, Massachusetts, Nebraska, New Jersey, Texas and Washington as authority for the principle above stated in American Jurisprudence.

It is, therefore, concluded that in the instant case the holder of the legal title as well as the purchaser under the land contract are entitled to participate in the proceeding.

For error in declaring a mistrial and entering judgment for costs against the appellant, judgment of the Common Pleas Court is reversed and the cause remanded thereto for further proceedings according to law.

*Judgment reversed.*

Smith and Deeds, JJ., concur.