STATE OF OHIO, DIR. OF HIGHWAYS, *v.* ALVIN CONSTRUCTION CO.
ET AL.

[Cite as State, Dir. of Highways, v. Alvin Constr. Co., 8 Ohio Misc. 215.]

(Nos. 809816, 810445, 810446, 810447, 810802, 810919, 810920, 810921, 811002, 811003, 811004, 811005—Decided October 18, 1966.)

Probate Court of Cuyahoga County.

*Mr. William B. Saxbe,* Attorney General, and *Mr. Fred G. Reiners,* for the state of Ohio, Director of Highways.

*Mr. George J. McMonagle, Mr. Michael M. Gavin* and *Mr. David Stein,* for the property owners.

MERRICK, P. J. These are twelve appropriation cases brought by the state of Ohio for highway purposes. The immediate question before this court are twelve oral motions for separate trials.

The actions were filed in the Court of Common Pleas of this county early in the year 1965. By virtue of an agreement between the judges of the two courts, and under authority of Section 2301.121, Revised Code, they were transferred to this court in July of 1965.

On December 29, 1965, counsel for the owners and assistants on the staff of the Attorney General were present at a pre-trial hearing before the referee assigned to these cases. All counsel agreed to consolidate the twelve cases and try them

together. As a practice, this court does not make a formal entry of the consolidation until the time of trial. The experience of this court in appropriation cases points up that about 75 per cent of all cases of this type are settled without a contested jury trial. The entry of consolidation is deferred until all efforts toward settlement have failed.

At the pre-trial hearing, the court was advised that the owners, acting through a trustee had pooled their respective interests in the twelve parcels and had formed a syndicate to develop the area and improve it with several apartment buildings and attendant accommodations. This is what is known in the real estate business as an "assemblage" or a "complex." The court was further advised that, acting through the same trustee, the owners had negotiated with members of the Attorney General's staff to permit the State Highway Department to enter and eventually take the various properties for highway purposes. This was done and Interstate Route 71 has been constructed through the properties.

When the cases approached the trial list of this court, the writer of this opinion arranged a conference of counsel for the purpose of ascertaining whether all efforts toward settlement had been exhausted and for the further alternative purpose of setting a trial date, convenient to the calendars of all counsel. Advice was sent to the court that the parties were unable to agree upon a settlement. The court then set the case for a jury trial on May 9, 1966.

On the date set for trial, all counsel requested a conference with the writer to discuss procedure in the trial of the case. At the request of three members of the staff of the Attorney General, the writer gave an "off the record" opinion of the value and import of certain building permits that had been issued to the owners for the building of large multiple suite apartment buildings by the city of Brook Park. Counsel stated that expert appraisers would be called by both parties to testify as to the value of the entire complex upon the date upon which the permissive entry had been given to the State Highway Department.

A friendly discussion was then commenced between counsel relative to a settlement of the cases. The negotiations consumed the entire court day and was interspersed with recesses

to permit the assistants to the Attorney General to telephone long distance to their central office and that of the highway deparment, both located in Columbus, Ohio, as well as to contact the Assistant Attorney General in charge of litigation in this county. At the request of all counsel, permission was granted to adjourn the conference to the next morning, at which time there was a short conference with the writer at which it was then apparent that the parties were too far apart to anticipate a settlement. At the further request of counsel, the matter was adjourned another day and counsel were advised by the writer to be prepared to empanel a jury and that no further continuances or delays would be granted. In the afternoon of that second day the court was advised by both counsel that a settlement had been reached and agreed upon and that proper journal entries would be presented to carry the agreement to final judgment.

No journal entry was forthcoming and the matter was set for hearing on June 2, 1966, to determine why a settlement journal entry had not been presented to the court. At that hearing counsel for both sides, who had been appearing at the various hearings and who had notified the court that a settlement had been reached, were present with representatives of the State Highway Department. Honorable William B. Saxbe, the Attorney General, was personally present and addressed the court. A transcript of the proceedings is available, but for the purpose of brevity, Mr. Saxbe stated that "perhaps" a settlement agreement had been reached between counsel for the owners and his several assistants in charge of the case and that "perhaps" the settlement was agreed to by representatives of the State Highway Department, but that he personally and officially was not in accord with the settlement and that he would not present or approve an entry carrying the settlement into legal effect. He stated that if all others connected with the case desired a settlement, including the Director of Highways, that whatever journal was presented would have to contain his endorsement that he did not concur in the entry.

This court concedes that Mr. Saxbe is the Attorney General and as legal counsel for the State Highway Department must concur in any settlement arrived at in state business handled by his assistants. This court would never accept a settlement

journal entry in this case unless the same was concurred in by Mr. Saxbe.

On July 8, 1966, the court was advised by Mr. Saxbe that the assistants who had taken part in the negotiations for settlement and who had advised the court that the same had been settled would no longer handle the case and further advised the court of the names of two other assistants who would handle the trial of the cases.

For the purpose of eliminating or disposing of any questions other than the amount of damages, the court set the cases for hearing in Columbus, Ohio, on September 9, 1966. The writer had other appointments in the capital city that day and thought the progress of the cases might be accellerated. The time and place was agreed to by all counsel. At the opening of the hearing, Hon. Fred G. Reiners, Chief Counsel to the Attorney General, appeared and stated to the court that the two assistants previously named to replace the three assistants who had agreed to the settlement, were also relieved of responsibility in the cases and that he would personally represent the Attorney General in the proceedings.

As the hearing opened, Mr. Reiners made oral motions in each docketed case, requesting separate trials.

Section 5519.02, Revised Code, permits consolidation of these cases with the consent of the parties. There is no question but what the parties agreed to a consolidation almost a year ago. Pursuant to such agreement both parties have had appraisals made by experts on the basis of the use of these properties as an "assemblage" or "complex." If the amounts mentioned in the settlement negotiations and the settlement agreement are any criterion, the fees and costs for re-appraisals as twelve separate parcels will be very costly to the owners.

These parcels were acquired by the owners and the agreement to combine the properties entered into long before the Director of Highways determined and had necessary consents as to the location of the highway.

The rights of de-facto owners is to be respected, notwithstanding that the recorded title indicates otherwise. This being an action in rem, the state of Ohio was only required to name the recorded interest holders. On the trial of the case, however, the actual owners of interest may be shown and must be

considered to be included in the term, "owners." The terms "owner" and "owning" as employed in a statute depend somewhat for their signification upon the connection in which they are used. "To own" is defined "to hold as property; to have a legal or rightful title to; to have; to possess,". and an "owner" is "one who owns; a rightful proprietor." An owner is not necessarily one owning the fee simple, or one having in the property the hightest estate it will admit of. One having a lesser estate may be an owner, and indeed, there may be different estates in the same property vested in different persons and each be an owner thereof. *B. & O. Rd.* v. *Walker*, 45 Ohio St. 577-585. *In re Appropriation of Land of Bennett*, 118 Ohio App. 207-215.

The parcels were considered as a "complex" or "assemblage" by the state of Ohio shortly after these cases were filed. The negotiations for entry and possession were made with the trustee for all owners. The testimony shows that the various record title holders, some time ago entered into an agreement to consider each owner of a parcel to have an interest in each other parcel in the "complex"; that they associated together to build multiple suite buildings which they contend is the highest and best use to make of the parcels so far as value is concerned. The parcels were purchased, the owners reached the agreement stated and secured a building permit on this basis. The agreement likewise commits each owner to a settlement between themselves as to any distribution of any award of damages. The essence of this testimony as to these agreements will be reduced to writing and entered in the record. Having this of record the trial as to damages may proceed.

The Attorney General had the right to abrogate the settlement agreement of his assistants as the writer has indicated earlier in this opinion. He may replace one set of trial attorneys with another and then in turn replace the latter with his Chief Counsel. With these moves, whether they be tactical maneuvers or mere whims the court can have no complaint. However, when the conduct of his staff members and their agreements lead to expensive costs by the owners, of preparation for trial, the court must intervene. The Attorney General through his staff members agreed to a consolidation of these cases. The owners proceeded on this theory and pre-

pared their case accordingly. The state of Ohio negotiated on the basis that these cases involved some sixteen acres being readied for the building of apartments by a syndicate of owners.

At this time, to require twelve separate trials would necessitate delays of years and would only be in satisfaction of a whim of the Attorney General who must have conceived the theory as a very belated afterthought.

The motions to abrogate the agreement to consolidate and for separate trials is overruled. Exceptions will be noted on behalf of the state of Ohio.