[Cite as *Allason v. Gailey*, 189 Ohio App.3d 491, 2010-Ohio-4952.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ALLASON, | ) | |
| | ) | CASE NO. 09 CO 26 |
| APPELLEE, | ) | |
| | ) | |
| v. | ) | OPINION |
| | ) | |
| GAILEY, | ) | |
| | ) | |
| APPELLANT, et al. | ) | |

CHARACTER OF PROCEEDINGS:　　Civil Appeal from Common Pleas
　　　　　　　　　　　　　　　　　　　Court, Case No. 09 CV 440.


JUDGMENT:　　　　　　　　　　　　Reversed.


APPEARANCES:

Stacey & Powers Co., L.P.A., and David P. Powers, for appellee.

Donald P. Leone, for appellant.



JUDGES:
Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

　　　　　　　　　　　　　　　　　　Dated:　September 30, 2010


　　　DeGenaro, Judge.

{¶ 1}   This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral argument before this court.  Defendant-appellant, Tina Cole, n.k.a. Tina Cole Gailey, appeals the judgment of the Columbiana County Court of Common Pleas that granted judgment to plaintiff-appellee, Kathy Allason, and dismissed Gailey's counterclaim in this declaratory-judgment action regarding the distribution of fire-insurance proceeds between parties to a land-installment contract.  On appeal, Gailey argues that the trial court erred in its division of the insurance proceeds. She also asserts that the trial court erroneously dismissed her counterclaim regarding Allason's alleged breach of the contract.  Gailey also takes issue with Allason's failure to join Gailey's husband, Robert, as a party to the suit.

{¶ 2}   Upon review, Gailey waived the defense of failure to join her husband as a necessary party to the action.  However, Gailey is correct that the trial court's decision regarding the division of the fire-insurance proceeds is against the manifest weight of the evidence.  There is no competent, credible evidence supporting the court's decision to award $91,069.53 of the proceeds—an amount equal to the purchase-price balance—to Allason.  Allason failed to prove how her security interest would have been impaired by Gailey's proposal to use $45,000 of the proceeds to purchase a new modular home as a replacement and put it on a foundation on the property.  To the contrary, the evidence Allason set forth regarding the trailer's value demonstrates that her interest would actually have been enhanced by Gailey's proposal.  Further, the trial court's decision erroneously accelerated Gailey's performance under the contract, because it did not contain an acceleration clause.  Gailey, as equitable owner of the property, was entitled to retain the

balance of the insurance proceeds.

{¶ 3}   Since it is a legal impossibility to place the parties in the position they would have been had the trial court made the correct decision, we look to equitable principles to fashion a remedy.   Accordingly, we reverse the decision of the trial court and enter judgment in the amount of $45,000 in favor of Gailey.  Gailey's second assignment of error is rendered moot based on our resolution of the first assignment of error.

### Facts and Procedural History

{¶ 4}   In September 2007, Allason, as vendor, by a land-installment contract, sold to Gailey, as vendee, a 3.145-acre tract of real estate in Columbiana County with some outbuildings upon which a recently renovated double-wide trailer was situated.   The contract was drafted by Allason's real-estate agent and her attorney.   Pursuant to the contract, Gailey agreed to pay $105,000 for the property and the trailer.  Gailey provided a $13,000 down payment, and the $92,000 balance with interest at 6 percent per year was payable in monthly installments of $551.59.  The contract specified that a balloon payment for the full unpaid balance would become due on October 15, 2009.   There was no acceleration clause.

{¶ 5}   The contract also provides:

{¶ 6}   "Vendee shall provide and maintain fire and extended insurance coverage for the improvements on the property, in an amount not less than the purchase price balance, in companies satisfactory to the Vendor, with loss payable to Vendor and Vendee, as their interest [sic] appear.

{¶ 7}   "* * *

{¶ 8} "Vendee is responsible for all maintenance and repairs on said property and Vendee agrees to keep said property in good condition."

{¶ 9} Gailey initially continued the existing insurance policy that Allason had taken out for the trailer. However, on October 31, 2008, Gailey, along with her husband, Robert, who was not party to the contract and whom Gailey had married in the interim, took out an insurance policy with American Modern Select Insurance Company. This policy listed Allason as a lienholder. Included in this policy was comprehensive replacement coverage for the trailer in the amount of $95,000.

{¶ 10} In January 2009, the mobile home was completely destroyed by fire. American Modern determined that there was a total loss of structure and tendered a check in the amount of $95,000—the policy limit. American Modern also issued a separate check for over $40,000 to Gailey and her husband to cover their personal-property losses, i.e., the contents of the trailer, and living expenses. Those funds are not in dispute in this case. This disputed $95,000 check for the structure loss was made out jointly to Allason, Gailey, and Gailey's husband, Robert.

{¶ 11} From the beginning, the parties could not agree about the proper disposition of the $95,000 insurance proceeds. It was Allason's understanding based on the terms of the contract that she was entitled to receive the purchase-price balance from the insurance proceeds and that Gailey was entitled to the remainder. Allason contended that if Gailey wanted a replacement trailer she must use her own funds or obtain her own financing to rebuild. Gailey believed she was entitled to use the proceeds to purchase a comparable replacement trailer and that she was entitled to retain any remaining funds. Gailey found a

replacement modular home for $27,000 and entered into a purchase agreement with a dealer; however, Allason refused to endorse the insurance check and Gailey was unable to obtain bank financing to purchase the replacement herself. Gailey testified that she planned to put the replacement dwelling on a foundation and put a basement under it, which would bring the total replacement cost to $45,000. Gailey stated that this option was proposed to Allason and that she planned to title the replacement dwelling in Allason's name until the contract balance was paid in full. Gailey planned to retain the remaining $50,000 in insurance proceeds until the October 15, 2009 balloon-payment date, at which time she would pay that amount to Allason and obtain a bank loan and mortgage to pay the remaining amount owed on the contract.

{¶ 12} Allason, however, demanded an immediate payoff of the purchase-price balance, upon receipt of which she agreed to transfer the real estate (without a replacement dwelling) to Gailey free and clear of all liens, except for current real-estate and mobile-home taxes, which were Gailey's responsibility under the contract. It is undisputed that as of June 11, 2009, the balance due on the contract was $90,787.76 with interest continuing to accrue at the rate of $14.83 per day.

{¶ 13} Gailey continued to make payments to Allason under the terms of the contract even after the trailer was destroyed by fire, and she and her husband lived in a small camper on the property. Gailey was late making payments several times, which prompted Allason's counsel to send a letter demanding payment. However, each time Gailey made the required monthly payment, which Allason accepted.

{¶ 14} On April 17, 2009, Allason filed a declaratory-judgment action in the

Columbiana County Court of Common Pleas to resolve the issue of the proper division of the insurance money. American Modern and Gailey were named as defendants. American Modern subsequently deposited the disputed $95,000 in insurance proceeds with the court and was dismissed as a party to the case.

{¶ 15} On May 8, 2009, Gailey filed an answer, counterclaim, and request for injunctive relief. Gailey's counterclaim alleged that Allason breached the contract by not endorsing the insurance-proceeds check to Gailey to allow her to replace the trailer. She also contended that Allason breached the contract by demanding full payment before October 15, 2009, the date the final balloon payment was due.

{¶ 16} The matter came for a bench trial on June 11, 2009. Allason and Gailey testified. The land contract, insurance contract, and other relevant documents were admitted without objection. Both sides filed trial briefs with the court. In a June 30, 2009 judgment entry, the trial court issued a decision in Allason's favor and dismissed Gailey's counterclaim. Specifically, the court ordered as follows:

{¶ 17} "In accordance with this judgment the Court orders that the monies being held in deposit in this case by the Columbiana County Clerk of Courts be dispersed [sic] by the Clerk as follows:

{¶ 18} "a) The sum of $91,069.53 payable to Kathy Allason and Attorney David Powers and mailed to Attorney David Powers at 20 South Main Street, Columbiana, Ohio 44408.

{¶ 19} "b) Any and all remaining monies in the hands of the Clerk including any interest which might have been accrued during the time said monies are [sic] on deposit

shall be paid *less the court costs of this case*, shall be payable to Tina Gailey and Attorney Donald Leone at 24 West Boardman Street, Youngstown, Ohio 44503." (Emphasis sic.)

**{¶ 20}** Gailey filed a motion to stay execution of judgment pending appeal with the trial court on July 2, 2009, which the trial court overruled, because the funds had already been disbursed by the clerk's office on June 30, 2009, the same day final judgment was issued.

**{¶ 21}** On July 7, 2009, Gailey filed a request for findings of fact and conclusions of law and a motion for new trial. The court issued a judgment entry on July 20, 2009, deferring a ruling on the motion for new trial pending the filing of findings of fact and conclusions of law as requested. Both parties were granted leave to file proposed findings of fact and conclusions of law. Allason filed hers on July 23, 2009. Instead of doing the same and waiting for the trial court to issue its own findings of fact and conclusions of law, Gailey filed a notice of appeal with this court on July 29, 2009.

**{¶ 22}** Gailey requested a stay of execution of judgment pending appeal with this court on August 26, 2009, which Allason opposed. On September 16, 2009, this court granted a partial stay ordering that $29,000 in insurance proceeds remain in escrow pending appeal. This court ordered Allason to deposit $29,000 with the Clerk of Courts within seven days.

**{¶ 23}** A docket check revealed that Allason never deposited the funds with the clerk's office. During oral arguments, Allason's counsel represented that he was unaware that his client had not complied. Show-cause proceedings are pending separately before this court.

## Allocation of Insurance Proceeds

{¶ 24} In Gailey's first of three assignments of error, she asserts:

{¶ 25} "That the trial court's judgment awarding Plaintiff/Appellee the proceeds of fire insurance policy to pay off the balance on land installment contract before due date, and when the contract was not in default was contrary to law and against the manifest weight of the evidence."

{¶ 26} R.C. 2721.10 provides: "When an action or proceeding in which declaratory relief is sought under this chapter involves the determination of an issue of fact, that issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the action or proceeding is pending." Hence, with regard to factual issues, an appellate court's "inquiry * * * involves whether the trial court's judgment was against the manifest weight of the evidence." *Blair v. McDonagh*, 177 Ohio App.3d 262, 2008-Ohio-3698, 894 N.E.2d 377, ¶ 56. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 376 N.E.2d 578.

{¶ 27} On June 30, 2009, the trial court found that "the amount due on the purchase price balance at any one time defines the interest of the seller in the land contract with the difference between the balance due and the original purchase price defining the interest of the buyer." The trial court thus awarded Allason $91,069.53 of the proceeds, which was equal to the purchase-price balance at the time of judgment, relying in part upon the following language from the contract:

**{¶ 28}** "Vendee shall provide and maintain fire and extended insurance coverage for the improvements on the property, in an amount not less than the purchase price balance, in companies satisfactory to the Vendor, with loss payable to Vendor and Vendee, as their interest [sic] appear."

**{¶ 29}** The trial court entered its order despite the facts that the contract provided that the final balloon payment was not due until October 15, 2009, and that there was no acceleration clause.

**{¶ 30}** Allason urges this court to uphold the trial court's determination. She notes that in dealing with a mortgagee-mortgagor relationship, the phrase "as their interests appear," or the like, is a term of art that means that in the event of loss, the insurance proceeds are used to pay off the remaining mortgage indebtedness. See *AmeriTrust Co. Natl. Assn. v. W. Am. Ins. Co.* (1987), 37 Ohio App.3d 182, 183, 525 N.E.2d 491; Couch on Insurance (3d Ed.)*,* Section 65:17. Allason advocates that the land-contract vendor-vendee relationship is analogous or at least similar enough that the meaning of such a loss-payable clause should be the same in a land-installment-contract situation. Allason points to the fact that she was listed as a lienholder in the insurance contract, just as a mortgagee would be. Allason further notes that "Ohio courts have analogized the seller's retention of legal title to the property as a lien 'similar to a mortgage for the unpaid purchase price; the title is kept as security for the debt.'" *Wood v. Donohue* (1999), 136 Ohio App.3d 336, 339, 736 N.E.2d 556, quoting *Flint v. Holbrook* (1992), 80 Ohio App.3d 21, 28, 608 N.E.2d 809, and citing cases. Thus, Allason argues that this court should treat the loss-payable clause in the land contract the same way it would in a mortgage situation.

{¶ 31} Gailey counters that land contracts are inherently different from mortgages, especially in this case when, unlike in the typical mortgage, there is no acceleration clause. Gailey also argues that equity dictates that the trailer should be rebuilt. Further, she asserts that there is no competent, credible evidence supporting the trial court's $91,069.53 award, since Allason failed to demonstrate how her security interest was impaired by Gailey's proposed replacement. We agree.

{¶ 32} First, the language of the loss-payable clause, which states that in the event of a fire a "loss [is] payable to Vendor and Vendee, as their interest [sic] appear," is ambiguous. If a contract, or a term in a contract, is reasonably susceptible to more than one meaning, then it is ambiguous and extrinsic evidence of reasonableness or intent can be employed. *Steubenville v. Jefferson Cty.*, 7th Dist. No. 07 JE 51, 2008-Ohio-5053, at ¶ 22. The trial court correctly recognized that this case hinged in large part on the interpretation of the loss-payable clause and permitted parol evidence regarding the meaning of the provision. Allason testified that she understood the loss-payable clause to mean she was entitled to receive the balance of the purchase price from the insurance proceeds. To the contrary, it was Gailey's understanding that she was entitled to a replacement trailer and to retain any excess insurance proceeds.

{¶ 33} It is a long-standing rule of contract construction that ambiguous contracts are construed against the drafter. *Handel's Ent., Inc. v. Wood,* 7th Dist. Nos. 04 MA 238 and 05 MA 70, 2005-Ohio-6922, at ¶ 104, citing *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 314, 667 N.E.2d 949. Because the contract was drafted by Allason, the

general principle dictates that the loss-payable clause should be construed against Allason and in favor of Gailey.

{¶ 34} Moreover, *Kulich v. Troppe* (Apr. 8, 1992), 9th Dist. No. 15260, which involves the allocation of fire-insurance proceeds between parties to a land contract, supports Gailey's position that she was entitled to use the funds to replace the dwelling and retain any excess. Allason argues that *Kulich* is factually distinguishable because the contract in that case included an express provision that the vendee was required to keep the property "in good condition and state of repair" and that in the event of a fire, "insurance proceeds shall be utilized to restore and repair the Premises." Id. at *1. However, the contract here likewise contains a provision obligating Gailey to keep the premises in good repair, stating specifically that "Vendee is responsible for all maintenance and repairs on said property and Vendee agrees to keep said property in good condition." That the *Kulich* contract also contained a more specific provision regarding rebuilding in the event of fire, while the contract here does not, is an immaterial distinction, since both contracts contained a more general duty for the vendees to keep the property in good repair.

{¶ 35} In *Kulich*, fire damaged a house that was subject to a land-installment contract, rendering it uninhabitable. As in this case, the contract in *Kulich* required the vendees to maintain fire insurance on the dwelling, with both parties named as insured "as their interests appear." *Kulich* at *1. In that case, after the fire, the insurance company adjusted the loss at $21,764.47. The vendees then spent approximately $8,000 to repair the house. In a subsequent legal proceeding, the vendors argued that the vendees' repairs

were inadequate and that the vendors were entitled to the remaining insurance proceeds. The trial court ordered the excess insurance funds split equally between the parties. On appeal, the Ninth District reversed, first noting that "by the plain terms of the land contract, each was to be insured only 'as their interests appear' and not necessarily in precisely equal proportions. As a result, the Vendors were entitled to a share of the fire insurance proceeds only to the extent that they carried their burden by proving that their security interest had been impaired." Id.

{¶ 36} The court in *Kulich* concluded that there was no evidence in the record to sustain the trial court's determination that the house was not restored to its prior condition, since the "Vendors failed to submit a single exhibit which would allow the court to compare the condition of the house before the fire with the state of the house after the repairs. No appraisals or testimony was offered by Vendors, or anyone else, specifying a value difference. * * * At no time during the course of the hearing did the Vendors explain, let alone prove by a preponderance of the evidence, how and to what extent their interests had diminished despite the Purchasers' repairs." Id. Thus, the court concluded that absent any evidence of impairment of their security interest, the vendors had no claim to the fire insurance proceeds, and that "[c]onsistent with the standards of equity, the Purchasers are entitled to any amounts remaining after repairs." Id. at *3.

{¶ 37} Similarly, Allason failed to prove how her security interest would be impaired if the destroyed trailer was replaced with a modular home purchased and installed on a foundation with a basement at a cost of $45,000. When asked on redirect how her security interest would be impaired, Allason's answer was stricken as speculative:

{¶ 38} "Q. Okay. If you - - if they put a home on this property that is valued at less than $95,000, do you believe that your security interest in this property would be impaired?

{¶ 39} "A. Yes I do, because if they can't get a loan now, they're not going to get one in October.

{¶ 40} "MR. LEONE. Object to speculation.

{¶ 41} "THE COURT: Sustained."

{¶ 42} When asked earlier at trial to place a separate value on the trailer, Allason was unable to do so:

{¶ 43} "Q: And what was your estimated value of that stand-alone doublewide?

{¶ 44} "A. I had no estimated value of the stand-alone doublewide. I sold it as a whole. I had the -- when I hired the real estate agent, to represent me, she made a comparative market analysis, which Mr. Powers has, showing the other homes in the area comparable to that home, and I priced the home accordingly."

{¶ 45} And the only evidence Allason provided as to the trailer's value was that she purchased it for $5,000, and spent $20,000 in materials and $10,000 in her own labor to renovate it. Thus, even using this rather speculative total of $35,000 as the value, Allason's security interest would not be impaired by Gailey's proposal to spend $45,000 to replace the dwelling, it would be improved. First, Gailey testified that the replacement trailer would be titled in Allason's name. Second, had Gailey failed to make the balloon payment on October 15, 2009, Allason would retain possession of the parcel with a replacement trailer worth $10,000 more than when the parties entered into the contract. That the insurance company adjusted the loss at the policy limits of $95,000 does not

demonstrate the value of the trailer as it sat before the fire. Rather, that amount was the policy maximum intended to cover comprehensive replacement costs in the event of the structure's total destruction, which occurred in this case.

{¶ 46} The record is devoid of any competent, credible evidence supporting the trial court's decision to award $91,069.53 of the proceeds to Allason, and therefore that determination is against the manifest weight of the evidence. The court should have permitted Gailey to use $45,000 of the funds to purchase a replacement and put it on a foundation as she proposed. That way, had Gailey failed to make the balloon payment in October 2009, or otherwise defaulted on the contract, Allason would have been able to recover—either through forfeiture or foreclosure proceedings, depending on the percentage of the purchase price that had been paid by Gailey at that point in time—both the land and the replacement dwelling. In that event, both parties would have received what they bargained for under the contract. By contrast, through the trial court's resolution of the case, Allason was permitted to receive the full purchase price under the contract, without providing what she promised therein, i.e., land and a dwelling.

{¶ 47} Further, like the vendees in *Kulich*, Gailey should have been permitted to retain the excess insurance proceeds. "The longstanding rule is that the equitable owner of the estate bears all risks but enjoys all benefits that may accrue." *Kulich,* 1992 WL 74208, at *2, citing *Gilbert v. Port* (1876), 28 Ohio St. 276, 293; *Whitacre v. Hoffman* (1947), 50 Ohio Law Abs. 493, 498; *United States v. Big Value Supermarkets*, *Inc.* (C.A.6, 1990), 898 F.2d 493, 497. See also *Wood*, 136 Ohio App.3d at 341.

{¶ 48} Our determination that Gailey was entitled to the remaining insurance

proceeds rests upon the fact that the contract does not contain an acceleration clause, meaning Gailey was not obligated to pay the purchase price balance in full until October 15, 2009. Pursuant to the contract, Gailey was only obligated to make the monthly payments to Allason, which she had continued to do even after the fire. On October 15, 2009, Gailey could have used the remaining insurance proceeds to pay the balance due under the contract.

{¶ 49} However, since that date has passed, and the trial court's judgment had the effect of terminating the contract prematurely, we cannot put the parties back in the position that they would have been had the trial court made the correct decision. When a legal remedy is impossible or incomplete, courts may look to equity to fashion a remedy. "It is a familiar maxim that equity treats as done what ought to be done." *Kulich* at \*2, citing *Geiger v. Bitzer* (1909), 80 Ohio St. 65, 73-74, 88 N.E. 134. "The function of equity is to supplement the law where it is insufficient, moderating the unjust results that would follow from the unbending application of the law." *Discover Bank v. Owens*, 129 Ohio Misc.2d 71, 2004-Ohio-7333, 822 N.E.2d 869, at ¶ 20, citing *Salem Iron Co. v. Hyland* (1906), 74 Ohio St. 160, 77 N.E. 751. "'In equitable matters, the court has considerable discretion in attempting to fashion a fair and just remedy.' *Winchell v. Burch* (1996), 116 Ohio App.3d 555, 561, 688 N.E.2d 1053, 1057. It has the power to fashion any remedy necessary and appropriate to do justice in a particular case." *McDonald & Co. Sec., Inc., Gradison Div. v. Alzheimer's Disease & Related Disorders Assn., Inc.* (2000), 140 Ohio App.3d 358, 366, 747 N.E.2d 843.

{¶ 50} "Equity may be invoked to prevent injustice or unfairness. Courts of equity

will assist the wronged party on the ground of fraud, imposition, or unconscionable advantage if there has been great inequality in the bargain. *Wagner v. Hummel* (1937), 25 Ohio L.Abs. 400. To prevent a court of equity from exercising jurisdiction, it is not enough that there be a remedy at law; the remedy itself must be plain, adequate, and complete. *Salem Iron Co. v. Hyland* (1906), 74 Ohio St. 160, 77 N.E. 751; *Gannon v. Perk* (1975), 47 Ohio App.2d 125, 1 O.O.3d 233, 352 N.E.2d 606, reversed in part and affirmed in part on other grounds (1976), 46 Ohio St.2d 301, 75 O.O.2d 358, 348 N.E.2d 342. An adequate remedy at law is one that affords relief with reference to the matter in controversy and is appropriate to the particular circumstances of the case. *Mt. Vernon v. Berman & Reed* (1919), 100 Ohio St. 1, 125 N.E. 116; *Brissel v. State* (1912), 87 Ohio St. 154, 100 N.E. 348." *Discover Bank* at ¶ 21.

**{¶ 51}** In this case, the trial court's decision to award Allason the purchase-price balance from the insurance proceeds, thereby improperly accelerating the contract, leaves Gailey with an inadequate legal remedy. Further, although governed by statute, land-installments contracts are equitable in nature. Upon execution, the vendee is deemed the equitable owner, because "the exchange is considered to have already taken place even though the contract is in fact executory." *Kulich,* 1992 WL 74208, at *2. Keeping the aforementioned equitable principles in mind, we award judgment to Gailey for $45,000, which is the amount she sought to purchase a replacement trailer and place it on a foundation with a basement. Accordingly, Gailey's first assignment of error is meritorious.

## Gailey's Counterclaim

**{¶ 52}** In her second assignment of error, Gailey asserts:

{¶ 53} "That the trial court's judgment that Plaintiff-Appellee's refusal to cash the insurance proceeds check and replace Defendant/Appellants [sic] primary residence was not a breach of the land installment contract between the parties was contrary to law and against the manifest weight of the evidence."

{¶ 54} In her counterclaim, Gailey alleged that Allason breached the land-installment contract by failing to endorse the insurance-proceeds check, thereby preventing replacement of the trailer, and by demanding full payment of the contract balance well in advance of the October 15, 2009 payoff date. Gailey sought breach-of-contract damages, including the return of her $13,000 down payment.

{¶ 55} The resolution of this assignment of error is largely dependent on the resolution of the first assignment of error. That is, determining whether Allason's actions constituted a breach of the contract depends on the interpretation of the loss-payable clause. As discussed, the trial court erroneously concluded that the loss-payable clause meant that Allason was entitled to receive the purchase-price balance from the fire-insurance proceeds. Had the trial court reached the correct decision, then it should have correspondingly found a breach of the contract.

{¶ 56} To succeed on a breach-of-contract claim, a plaintiff must show the existence of a valid contract, performance by one party, breach by another party, and damages or loss to the performing party. See *Lucio v. Safe Auto Ins. Co.*, 183 Ohio App.3d 849, 2009-Ohio-4816, 919 N.E.2d 260, ¶ 23. "'Breach,' as applied to contracts is defined as a failure without legal excuse to perform any promise which forms a whole or part of a contract, including the refusal of a party to recognize the existence of the contract or the doing of

something inconsistent with its existence." *Hanna v. Groom*, 10th Dist. No. 07AP-502, 2008-Ohio-765, at ¶ 14, quoting *Natl. City Bank of Cleveland v. Erskine & Sons* (1953), 158 Ohio St. 450, 110 N.E.2d 598, paragraph one of the syllabus.

{¶ 57} Here, the existence of a valid contract is not at issue. And although Allason argues on appeal that Gailey failed to perform under the contract by making the monthly payments as agreed, the record unequivocally demonstrates that Gailey ultimately made all payments, even after the fire destroyed the trailer. Further, Allason's refusal to cash the insurance-proceeds check to replace the trailer and her demand of payment before the October 15, 2009 balloon-payment date constitute a breach of the land-installment contract. Gailey contracted to purchase both a trailer and a parcel of land and agreed to pay by installments, with a final balloon payment due on October 15, 2009. By preventing the replacement of the trailer and demanding full payment without legal excuse to do so, Allason breached the contract. Gailey suffered damages in that she did not receive the benefit of her bargain; she agreed to pay $105,000 for land and a trailer, and in the end, received only the land.

{¶ 58} However, Gailey's damages were facilitated by the trial court's erroneous decision. That is, the court's ruling in this case had the effect of accelerating the contract and prematurely ordering payment of the balance and transfer of the deed to Gailey. As we explained in the context of the first assignment of error, it is impossible to put the parties back in the position they would have been had the trial court made the correct decision. Further, several of Gailey's requested remedies for the breach, namely rescission of the contract and refund of her down payment, are no longer feasible in light of the trial

court's ruling. Insofar as we have crafted an equitable remedy, as outlined above, to compensate Gailey for her loss, the second assignment of error is moot.

**Joinder of Necessary Parties**

{¶ 59} In her third and final assignment of error, Gailey asserts:

{¶ 60} "That Plaintiff/Appellee's failure to join Robert L Gailey as a Defendant/Appellant in a lawsuit, to adjudicate his right to proceeds of insurance was contrary to law as he was necessary and indispensable party because he was co-owner of the insurance policy and co-payee under the insurance check."

{¶ 61} Here Gailey claims that the trial court erred by failing to join Gailey's husband Robert to the action as a necessary and indispensable party pursuant to Civ.R. 19(A) or 19.1(A). Robert was not a party to the land-installment contract, but was listed as an "additional insured" in the insurance policy with American Modern. The $95,000 check for the loss of the mobile-home structure was made out to Gailey, Allason, and Robert jointly.

{¶ 62} Civ.R. 19.1(A) and 19(A) concern compulsory and permissive joinder, respectively, and both expressly provide that the failure to timely assert the defense pursuant to Civ.R. 12(G) or 12(H) constitutes a waiver thereof. Under Civ.R. 12(H)(2), a defense of failure to join an indispensable party under Civ.R. 19 may be made in "any pleading permitted or ordered by Civ.R. 7(A), by motion for judgment on the pleadings, or at trial on the merits." Civ.R. 12(H)(2). However, "a party waives this defense when it fails to take affirmative action to prosecute it." *Nationwide Mut. Fire Ins. Co. v. Logan*, 12th Dist. No. CA2005-07-206, 2006-Ohio-2512, at ¶ 33. Thus, "merely raising the defense in an answer without further affirmative action to prosecute the raised defense results in a

waiver of [the] defense." Id. at ¶ 24, quoting and adopting *Mihalic v. Figuero* (May 26, 1988), 8th Dist. No. 53921.

{¶ 63} In this case, although Gailey raised failure to join necessary parties as a generic defense in her answer, she failed to take any further action on the claim. Accordingly, this defense is waived. Moreover, as Allason points out, there is no prejudice in the failure to join Robert Gailey. He may have had an insurable interest in the personal property within the mobile home, but a separate check was issued for those losses. Any claim to a portion of the disputed insurance proceeds at issue is by virtue of his marriage to Gailey, which occurred after the execution of the land-installment contract. The interests of Gailey and her husband are aligned, and therefore even if the failure-to-join defense was not waived, there is no reversible error. Accordingly, Gailey's third assignment of error is meritless.

**Conclusion**

{¶ 64} In sum, Gailey waived the defense of failure to join her husband as a necessary party to the action. Gailey is correct that the trial court's decision regarding the division of the fire-insurance proceeds is against the manifest weight of the evidence and contrary to law. There is no competent, credible evidence supporting the court's decision to award $91,069.53 of the proceeds—an amount equal to the purchase-price balance—to Allason. Allason failed to prove how her security interest would have been impaired by Gailey's proposal to use $45,000 of the proceeds to purchase a new modular home as a replacement and put it on a foundation on the property. Further, the trial court's decision erroneously accelerated Gailey's performance under the contract, because the contract

contained no acceleration clause.  Gailey, as equitable owner of the property, was entitled to retain the balance of the insurance proceeds until the final payoff date specified in the contract.  Since it is a legal impossibility to place the parties in the position they would have been had the trial court made the correct decision, we look to equitable principles to fashion a remedy.  Accordingly, we reverse the decision of the trial court and enter judgment in the amount of $45,000 in favor of Gailey.  Gailey's second assignment of error is rendered moot based on our resolution of the first assignment of error.

Judgment reversed.

VUKOVICH, P.J., and WAITE, J., concur.