[Cite as *Susany v. Susany*, 2017-Ohio-132.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| DAVID SUSANY | ) | |
|     PLAINTIFF | ) | |
| | ) | CASE NO. 15 MA 0002 |
| VS. | ) | |
| | ) | |
| DOUGLAS SUSANY, et al. | ) | OPINION |
|     DEFENDANTS-APPELLEES | ) | |
| | ) | |
|     AND | ) | |
| | ) | |
| THERESA SUSANY | ) | |
|     DEFENDANT-APPELLANT/CROSS | ) | |
|     APPELLEE | ) | |
| | ) | |
|     AND | ) | |
| | ) | |
| S.E.T., INC. | ) | |
|     DEFENDANT- APPELLEE/CROSS | ) | |
|     APPELLANT | ) | |

| | | |
|---|---|---|
| DAVID SUSANY | ) | |
|     PLAINTIFF-APPELLANT | ) | |
| | ) | CASE NO. 15 MA 0089 |
| VS. | ) | |
| | ) | |
| DOUGLAS SUSANY, et al. | ) | OPINION |
|     DEFENDANTS | ) | |
| | ) | |
|     AND | ) | |
| | ) | |
| THERESA SUSANY | ) | |
|     DEFENDANT-APPELLEE | ) | |
| | ) | |
|     AND | ) | |
| | ) | |
| S.E.T., INC. | ) | |
|     DEFENDANT-APPELLANT | ) | |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Civil Appeal from the Court of Common Pleas of Mahoning County, Ohio Case No. 09 CV 371 |
| JUDGMENT: | Affirmed. |

APPEARANCES:

| | |
|---|---|
| For David Susany | Attorney Glenn Osborne<br>Attorney Leonard Schiavone<br>3801 Starrs Centre Drive<br>Canfield, Ohio 44406 |
| For S.E.T., Inc. | Attorney Stuart Strasfeld<br>100 East Federal Street, Suite 600<br>Youngstown, Ohio 44503 |
| For Theresa Susany | Attorney Marshall Buck<br>100 Federal Plaza East, Suite 926<br>Youngstown, Ohio 44503 |
| For Douglas Susany | Attorney Charles Dunlap<br>7330 Market Street<br>Youngstown, Ohio 44512 |
| For Jeffrey Susany and Gregory Susany | Attorney Scott Essad<br>721 Boardman-Poland Road, Suite 201<br>Youngstown, Ohio 44512 |

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: January 13, 2017

DeGENARO, J.

**{¶1}** This is a consolidated appeal. Theresa Susany appeals the December 12, 2014 judgment entry of the trial court in this shareholder derivative action, finding that her former husband, Douglas Susany owns 15% of the capital stock of the family-owned closely-held corporation, S.E.T., Inc. ("S.E.T." or "corporation"). David Susany, Douglas' brother, and S.E.T. appeal the May 28, 2015 judgment entry of the trial court finding that Theresa and Douglas own the property designated as 5500 Center Street, Lowellville, Ohio ("the shop property"), which was titled only in Douglas' name, and that the corporation has a month-to-month tenancy. Because the parties have not shown that the trial court abused its discretion, both appeals are meritless and the judgments of the trial court are affirmed.

### Facts and Procedural History

**{¶2}** This case involves two protracted actions; the civil case underlying this appeal and a parallel domestic relations case involving Douglas and Theresa. In 2009, David, who owned 45% of the capital stock of S.E.T., filed the instant action to determine the corporation's ownership rights in several pieces of property, including the shop property. The verified complaint named as defendants: Douglas, as owner of 55% of the voting shares and 15% of the capital stock in the corporation; Jeffrey Susany and Gregory D. Susany, sons of Douglas and Theresa, each as owners of 50% of the non-voting stock, and 20% of the capital stock of the corporation; S.E.T.; and Theresa, Joseph Zdrilich, and Donna Zdrilich, as titled owners of the properties at issue.

**{¶3}** The verified complaint requested that legal title to the properties be changed to S.E.T., or, in the alternative, that a constructive trust be imposed on the properties and that the titled owners be deemed trustees on behalf of the corporation; or that legal title be changed to reflect David's 45% ownership interest in the properties.

**{¶4}** Theresa filed an answer which included counterclaims and crossclaims for abuse of process against David (apparently based upon the filing of the above-captioned shareholder derivative action); breach of fiduciary duty against David and

Douglas; and to pierce the corporate veil, which was stated as a cause of action rather than a remedy. Theresa sought $25,000.00 in compensatory damages, and $50,000.00 in punitive damages. At the time, a divorce action initiated by Theresa was pending in the domestic relations court. Theresa filed a motion to consolidate the shareholder derivative action with the divorce action, however, the trial court never ruled on the motion to consolidate.

{¶5} Douglas filed an amended answer which included a counterclaim and a crossclaim against Theresa, seeking a determination of his percentage of ownership of capital stock in S.E.T. In her answer to the crossclaim, Teresa requested that the crossclaim be dismissed. However, in the divorce proceeding, Theresa and Douglas stipulated that the trial court should resolve the corporate issues. The domestic relations court, by way of a judgment entry, deferred the determination of both Douglas' stock ownership and the ownership of the shop property to the trial court.

{¶6} The pertinent facts are as follows. Douglas and Theresa were married in 1982. In 1988, Douglas and David founded S.E.T., which engages in the business of excavating and general contracting and undertakes projects that include streetscapes, road widening, sewer, water and site work. Douglas is responsible for running the office, handling insurance and bonding and all of the business aspects of the corporation, and David is in charge of the equipment and the shop. At the time it was founded, S.E.T. issued 100 shares of capital stock: 55 shares to Douglas and 45 shares to David. Although the brothers shared the equity in the corporation equally, Douglas held 10 additional shares of capital stock in order to maintain decision-making authority.

{¶7} In April of 2006, Douglas discovered that Theresa was engaged in an extramarital affair. She left the marital home for a short time but returned in an effort to reconcile with Douglas.

{¶8} Two months later, on June 27, 2006, shortly after Jeffrey graduated from college and returned home to work for the corporation, at a special shareholders meeting, Douglas and David voted to split the corporation's stock and issue 300

Class B nonvoting shares. The original 100 voting shares were designated as Class A stock. Of the new 300 Class B shares, 135 went to David and 165 went to Douglas. Douglas immediately divested himself of 160 of his newly acquired, nonvoting Class B shares by giving 80 shares to Jeffrey and eighty shares to Gregory (who was still in college). Douglas retained only 5 shares of the Class B stock. The result was that Douglas decreased his total ownership in S.E.T. stock from 55% to 15%, even though he retained 55% of the Class A voting shares.

**{¶9}** In addition to issuing the nonvoting Class B shares of stock, S.E.T. filed amended articles of incorporation. The first amendment allowed the shareholders to inter-deal with S.E.T. without being responsible or accountable to the corporation. The second amendment provided for a waiver of pre-emptive rights to establish that no holder of shares of stock in the corporation would have any pre-emptive right to purchase, subscribe, or otherwise acquire any shares of stock of the corporation. The third amendment provided that the corporation could repurchase any shares transferred to others at any time. The amended Articles of Incorporation were filed with the Ohio Secretary of State on June 7, 2006.

**{¶10}** Theresa left the marital home permanently in August of 2006. Several months later, she returned some of her property to the marital residence, but she never actually physically returned. Roughly two years later, in 2008, Theresa filed for divorce.

**{¶11}** Douglas testified that the timing of his stock dilution and changes to S.E.T.'s articles of incorporation, just two months after he learned of Theresa's infidelity, had nothing to do with a desire to reduce the assets available to Theresa in the divorce. Both parents testified that sometime during the summer of 2005, they and their son Jeffrey discussed the option of Jeffrey joining the family business. However Douglas testified that no action was taken until June of 2006. At the same time, the insurance company that provided bonding to the corporation wanted Douglas and David to formulate a succession plan to assure a smooth transition in the event something happened to Douglas. As a consequence, Douglas transferred

stock in the corporation to Jeffrey and Gregory in June of 2006.

{¶12} Theresa conceded that it was always the parents' intent that Jeffrey and Gregory would join the family business. At the time of the trial, Gregory and Jeffrey were twenty-eight and twenty-six years of age, respectively, both had graduated from The Ohio State University in construction management, and both were working at the corporation. Theresa testified that she had no objections to them having an ownership interest in the corporation, but that the capital stock was transferred to the boys without her knowledge in June of 2006.

{¶13} When asked at trial whether she wanted her sons to be divested of their capital stock, Theresa initially replied, "No." However, once she understood that the remedy she requested required that her sons be divested of their capital stock, she testified that she wanted ownership of the boys' capital stock to revert back to Douglas so that it could be divided evenly by the divorce court.

{¶14} Douglas drew a small annual salary from S.E.T. Because S.E.T. was an S corporation, a pass-through entity, Douglas incurred annual tax liability on S.E.T. profits in proportion to his stock ownership. He testified that, although he paid taxes on his annual share of the company's profits, S.E.T. more often than not retained the earnings.

{¶15} Douglas commonly used S.E.T. funds for his personal use – having referred to the retained earnings as, "for lack of a better term, a savings account issue," at his deposition. In fact, the construction of Douglas' post-divorce home on Kennedy Road, as well as the insurance and taxes on that property, were paid by the corporation. He admitted that maintenance of the marital residence was paid for in part by S.E.T. funds as well. Douglas conceded that virtually all of the personal vehicles driven by Douglas, Theresa, and their children when they were in high school and college were owned by S.E.T. Likewise, Douglas commonly charged personal expenses to his S.E.T. corporate credit card. The children collected monthly allowances from S.E.T., for which they received a W-2 form, although no work had been performed.

{¶16} Douglas testified that he regularly deposited S.E.T. revenue in his children's savings accounts. Douglas reasoned that he was protecting the corporation by hiding assets. He provided the same explanation for titling the various properties at issue in this case, including the shop property, in his name only, or in the names of others, over the years.

{¶17} According to David's testimony, the shop property was purchased with two checks, one in the amount of $6,500.00 and another in the amount of $20,000.00, written on the S.E.T. account. David further testified that the property taxes on the shop property since its acquisition are paid by S.E.T.

{¶18} The shop property was titled in Douglas' name only. However, minutes from a shareholders' meeting held on June 12, 2007, after Douglas and Theresa had separated but prior to the filing of the divorce petition, established that the shareholders discussed the need for additional space for equipment storage, and agreed to construct a 7,500 square-foot pre-engineered steel building "on land owned by [Douglas and Theresa]." The land referred to in the minutes is the shop property.

{¶19} The minutes further read, "The corporation is hereby authorized to enter into a land lease with [Douglas and Theresa] for an initial term of 25 years with five five-year renewal options at a rental rate of $100 per month." Douglas conceded at trial that he, David, and the boys signed the minutes as shareholders.[1]

{¶20} The April 27, 2011 Magistrate's Decision found that Douglas owned 15% of the stock and ownership of S.E.T., S.E.T. was the equitable owner of the shop property, and title to the shop property should vest in S.E.T. Theresa filed objections to the Magistrate's Decision and amended objections challenging the Magistrate's conclusions with respect to, among other matters not germane to this

---

[1]The Ohio Supreme Court in *N. Royalton City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 129 Ohio St.3d 172, 2011-Ohio-3092, 950 N.E.2d 955 (2011) defined a "ground lease" as a "lease that grants the right to use and occupy land." Id. at n.1, quoting American Institute of Real Estate Appraisers, The Dictionary of Real Estate Appraisal (1984) 146. Black's Law Dictionary defines the term "ground lease" as "a long-term (usually 99-year) lease of land only. Such a lease typically involves commercial property, and any improvements built by the lessee usually revert to the lessor. — Also termed ground-rent lease; land lease."

appeal, Douglas' stock ownership and the equitable ownership of the shop property.

**{¶21}** In an August 24, 2011 judgment entry the trial court overruled all of Theresa's objections, but for the objection related to the ownership of the shop property. The trial court remanded the issue to the Magistrate, with instructions that the Magistrate reconsider the existence of the lease mentioned in the corporate minutes. The entry specifically overruled Theresa's objection to the Magistrate's determination that Douglas owned 15% of the stock in S.E.T., Inc.

**{¶22}** Two years later, on July 26, 2013, Theresa filed a pleading styled: "Memorandum in Support of Findings Consistent with the Judgment Entry (of August 24, 2011)" which stated as follows:

> Based on the explicit instructions from Judge Sweeney to determine the ownership of the Shop Property consistent with the Lease Agreement, Defendant, Theresa Susany, respectfully request that this court make a finding that the property located on Quarry Road/55 (sic) Center Road, be deemed the marital property of Douglas Susany and Theresa Susany subject to division pursuant to the Domestic Relations Property Settlement Agreement.

**{¶23}** The Magistrate issued a Decision on October 21, 2013 regarding the shop property, which reads as follows:

> a. The Shop Property is the property of Douglas J. Susany and Theresa Susany;
>
> b. That a Lease Agreement between Douglas J. Susany and Theresa Susany for the Shop Property does exist and said Lease Agreement is a month to month tenancy.

**{¶24}** S.E.T. filed its objections to the Magistrate's Decision which Theresa opposed, arguing that the court was correct in determining that the shop property

was owned by Douglas and Theresa and that a lease agreement exists for the shop property. In a January 31, 2014 judgment entry the trial court overruled S.E.T.'s objections and adopted the Magistrate's Decision dated October 21, 2013.

**{¶25}** Theresa filed a notice of appeal challenging the interim August 24, 2011 judgment entry wherein the trial court determined that Douglas made valid gifts of S.E.T. stock and is only a 15% shareholder as well as the January 31, 2014 final judgment entry. S.E.T. also appealed, challenging the trial court's determination regarding the equitable ownership of the shop property.

**{¶26}** On March 14, 2014, this Court dismissed both appeals sua sponte and remanded the case to the trial court to enter a final judgment, because the Judgment Entry dated January 14, 2014 failed to comply with the requirements of *Harkai v. Scherba Industries*, 136 Ohio App.3d 211, 736 N.E.2d 101, (9th Dist. 2000). *Harkai* holds that a trial court judge must separately enter a judgment setting forth the outcome of the dispute and the remedy provided, rather than simply adopt the findings of a Magistrate's decision. Civ.R. 53(D)(4)(d) requires the trial court to make an independent review of the magistrate's decision, which has been called "the equivalent of a de novo determination". *Shihab & Assoc. Co., L.P.A. v. Ohio Dept. of Transp.*, 168 Ohio App.3d 405, 2006-Ohio-4456, 860 N.E.2d 155, ¶ 13 (10th Dist.).

**{¶27}** In a May 28, 2014 judgment entry the trial court stated that the October 21, 2013 Magistrate's Decision was well supported and adopted the decision and entered it as a permanent order of the trial court. However, the findings of fact and conclusions of law related solely to the determination of the ownership of the shop property.

**{¶28}** No further action was taken by the parties until Theresa filed a pleading styled "Motion for Independent Review of Objections to Magistrate's Decision from April 27, 2011." This appears to be a third attempt by Theresa to challenge that particular magistrate's decision which the trial court initially resolved in its August 24, 2011 judgment entry.[2] In a December 12, 2014 judgment entry the trial court stated

---

[2]The first being her original objections, ¶20, supra, and the second being the pleading she filed in

that Douglas owned 15% of the stock and ownership of S.E.T., Inc., reasoning: "the transfer of stock by [Douglas] to his sons does not by itself demonstrate that [Douglas] intended to divest his interest in the corporation because of a pending divorce action, with the purpose of defrauding [Theresa] of any marital assets." It is important to note that, although the stock transfer occurred within a few months of Douglas' discovery of Theresa's infidelity, no divorce action was pending when the stock transfer was made.

**{¶29}** Theresa and S.E.T. both filed notices of appeal from this judgment entry. On April 21, 2015, this Court held them in abeyance, in order for the trial court to enter a final order addressing ownership of the shop property.

**{¶30}** On May 28, 2015, the trial court issued a judgment entry virtually identical to the May 28, 2014 judgment entry regarding ownership of the shop property. The trial court relied upon the corporate minutes to conclude that the shop property was owned by Douglas and Theresa and that title should be placed in both of their names. Because there was no written lease agreement, only the reference in the corporate minutes, the trial court found that the oral agreement violated the statute of frauds. As a consequence, the trial court found that a month-to-month tenancy existed between Douglas and Theresa and the corporation. Both S.E.T. and David appealed this judgment entry.

### Theresa's Appeal
### Value of Douglas S.E.T. Intertest

**{¶31}** Theresa presents a single assignment of error in her Merit Brief:

ASSIGNMENT OF ERROR: THE TRIAL COURT ABUSED ITS DISCRETION BY MISAPPLYING THE LAW AND FAILING TO FASHION THE CORRECT EQUITABLE REMEDY.

**{¶32}** "A trial court's decision to adopt, reject or modify a magistrate's report and recommendation, or to hold further hearings, will be reversed on appeal only for

---

2013, ¶ 22 supra.

an abuse of discretion." *Arrow Fin. Servs. v. Kuzniak,* 7th Dist. No. 06 MA 133, 2007-Ohio-2191, ¶ 21. "An abuse of discretion means the trial court's decision is unreasonable based upon the record; that the appellate court may have reached a different result is not enough to warrant reversal." *Smith v. Smith,* 7th Dist. No. 14 CA 0901, 2016-Ohio-3223, ¶ 13

**{¶33}** Theresa cites *Selanders v. Selanders*, 3rd Dist. No. 17-08-28, 2009-Ohio-2303, for the proposition that the trial court erred in concluding that Douglas has a 15% ownership interest in the corporation. After a divorce decree, the husband in *Selanders* filed for modification of his spousal support obligation to his ex-wife arguing a change in circumstances because he had sold his business to his sons. He then accepted employment with his former business at a reduced salary. The husband did not attempt to sell the business on the open market.

**{¶34}** The Third District concluded that the sale of the business was motivated by the husband's desire to reduce his spousal support obligation. Specifically, the husband voluntarily chose to sell the business to his sons and to take employment at a significantly reduced income, noting the timing was suspect as the husband was not close to a traditional retirement age and the sale occurred only four months after the original spousal support order. *Id.* ¶36. Thus, the panel held the husband's decision constituted a voluntary reduction in income taken in an attempt to avoid the Court's order of spousal support to the plaintiff. *Id.*

**{¶35}** While the facts in *Selanders* share some similarities with the facts here, the cases are sufficiently distinct that a fact finder could reach different conclusions regarding Douglas' intent. Here, the trial court concluded that there was insufficient evidence to show that Douglas intended to divest his interest in the company in order to reduce his marital assets. Douglas testified that he was facing pressure from the insurance company to name successors at S.E.T. due to his advancing age. Both Jeffrey and Gregory received degrees in construction management, and both were working at the company at the time of the trial. Theresa conceded that she and Douglas had intended that the boys would join the family business after they

graduated from college, even though the stock transfer in June of 2007 was made without her knowledge. Clearly, the trial court credited Douglas' testimony, which was supported, rather than contradicted, by Theresa's testimony that the boys would someday inherit a share of the family business. Accordingly, the trial court did not abuse its discretion in concluding that Douglas owned 15% of the capital stock in S.E.T.

**{¶36}** For the first time on appeal[3], Theresa advances the theory that her claim is equitable in nature and this Court should act in equity to fashion any remedy to do justice under the circumstances. *Yoskey v. Eric Petroleum Corp.*, 7th Dist. Columbiana No. 13 CO 42, 2014-Ohio-3790, ¶ 48. Decisions in equity "are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Keystone Driller Co. v. Gen, Excavator Co.* (1933), 290 U.S. 240, 245-246, 54 S. Ct. 146, 78 L. Ed. 293. "Equity may be invoked to prevent injustice or unfairness. Courts of equity will assist the wronged party on the ground of fraud, imposition, or unconscionable advantage if there has been great inequality in the bargain. *Allason v. Galley*, 189 Ohio App.3d 491, 2010-Ohio-4952, 939 N.E.2d 206, ¶ 50 (7th Dist.).

**{¶37}** Theresa appears to argue that this court should fashion a remedy that awards her half of the value of Douglas' former 55% ownership of the company, without divesting the boys' ownership interest. Theresa argues in her merit brief, "Douglas still controls 55% of the voting shares of the company stock and has the ability to manipulate the percentage of ownership of stock in the company as he desires. Equity demands that this Court correct the trial court's error and order that Douglas remains the owner of 55% of S.E.T." However, Theresa's argument fails for two reasons.

**{¶38}** First, appellate courts will not review an argument raised for the first time on appeal. *Fullum v. Columbiana Cty. Coroner*, 7th Dist. No. 12 CO 51, 2014-

---

[3]Theresa did not raise this claim in her pleadings; instead she asserted equity for the first time in her closing argument at trial.

Ohio-5512, 25 N.E.3d 463, 472, ¶ 39, citing *Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, 912 N.E.2d 595, ¶ 34.  Additionally, an appellant cannot change the theory of his case and present new arguments for the first time on appeal. *State ex rel. Guttierez v. Trumbull Cty. Bd. Of Elections*, 65 Ohio St.3d 175, 177, 757 N.E.2d 362 (1992).  The only claims that Theresa raised in the trial court were abuse of process, breach of fiduciary duty, and piecing the corporate veil.  In response to Douglas' cross-claim regarding his stock ownership, Theresa's answer merely sought dismissal of the cross-claim.  Because she failed to advance an equitable remedy before the trial court, we will not consider it on appeal.

{¶39}  Second, Theresa's equitable claim is predicated upon her argument on appeal that the trial court erred by "ignoring the undisputed facts demonstrating that [Douglas] created an illusory transfer of stock intended to diminish his ownership in S.E.T. prior to his divorce."  To the contrary, there was a genuine issue of material fact surrounding Douglas' intention in transferring the stock in June of 2006. Theresa herself testified that she and Douglas intended that the boys would inherit part of the company after they graduated from college.  Accordingly, there was competent and credible evidence supporting the trial court's findings of fact.  Thus, Theresa has failed to show that she suffered any injustice or unfairness.

{¶40}  The trial court did not abuse its discretion in finding that Douglas owns 15% of the capital stock of S.E.T. Accordingly, Theresa's sole assignment of error is meritless.

## S.E.T. & David's Appeal
## Ownership of Shop Property

{¶41}  David and S.E.T. advance a single assignment of error:

THE TRIAL COURT ERRED IN DETERMINING THAT THE SHOP PROPERTY IS OWNED BY DOUGLAS SUSANY AND THERESA SUSANY.

{¶42}   David and S.E.T. contend that a purchase-money resulting trust was

created in favor of S.E.T. when the shop property was purchased, relying on David's testimony that the shop property was purchased with two checks for $6,500.00 and $20,000.00 written on the S.E.T. account. David further testified that the property taxes on the shop property have been paid by S.E.T. Moreover, a pre-fabricated building purchased by S.E.T. was constructed on the shop property valued at $200,000.00.

{¶43} "A purchase-money resulting trust occurs when property is transferred to one person, but the entire purchase price is paid by another." *Rardin v. Estate of Bain*, 7th Dist. No. 08 CA 853, 2009-Ohio-3332, ¶¶ 82-86, citing Restatement of the Law 2d, Trusts (1959) 393, Section 440, and 5 Scott on Trusts (4th Ed.1967), Section 440. In such a case, a resulting trust arises in favor of the person by whom the purchase price is paid. *Id.* Central to the determination of whether a purchase money resulting trust exists are the issues of (1) who paid for the purchase and (2) who was intended to beneficially enjoy the property. *Id.*

{¶44} Restatement of the Law 2d, Trusts (1959) 416-417, Section 454, reads:

Where a transfer of property is made to one person and a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price, unless he manifests an intention that no resulting trust should arise or that a resulting trust to that extent should not arise.

{¶45} Therefore, "the equitable owner has an interest in such proportion as the amount he paid bears to the total purchase price." *Rardin* at ¶¶ 82-86. The burden of proof to establish a purchase-money resulting trust is clear and convincing evidence. *Id.*

{¶46} At first blush, it appears that a purchase-money resulting trust should arise in favor of the corporation, which paid the full purchase price for the property and for its maintenance, as well as the purchase price for the pre-fabricated building

that is located on the shop property. However, the Restatement articulates an exception to the general rule, that is, a purchase-money resulting trust should arise unless the purchaser of the property "manifests an intention that no resulting trust should arise or that a resulting trust to that extent should not arise." Restatement at Section 454. Douglas conceded at trial that he regularly treated S.E.T. funds as his personal savings account. Conversely, he often titled S.E.T. assets in his own name and the names of Theresa and their sons to shield the assets from S.E.T. creditors. As a consequence, the fact that the shop property was titled in Douglas' name only and financed through the S.E.T. account are not dispositive of ownership.

**{¶47}** Even assuming that S.E.T. funds financed the shop property, the trial court did not abuse its discretion in concluding that S.E.T. was not the equitable owner of the shop property. Despite the fact that Theresa had left the marital home, and efforts at reconciliation had failed, Douglas and the other shareholders acknowledged on June 12, 2007 that Theresa had an ownership interest in the shop property. The minutes further memorialized the shareholders' intent to erect the pre-fabricated building on the shop property. Aware of the value of the shop property and the pre-fabricated building to be placed there, the shareholders nonetheless recognized Douglas and Theresa's ownership of the shop property.

**{¶48}** David and S.E.T. argue Theresa will be unjustly enriched due to the improvements made on the shop property. However, this argument ignores the fact that the shareholders contemporaneously recognized Theresa's ownership interest in the shop property and expressed their intention to erect the pre-fabricated building on June 12, 2007. Applying the test we articulated in *Rardin*, supra, the evidence adduced at trial does not clearly establish who paid the purchase price for the shop property, but the minutes of the shareholders' meeting clearly demonstrate that Douglas and Theresa were intended to beneficially enjoy the property.

**{¶49}** As the trial court did not abuse its discretion when it found that Douglas and Theresa are the owners of the shop property, David and S.E.T.'s assignment of error is meritless.

{¶50} In sum, the trial court did not abuse its discretion in this matter. Therefore, the judgment entries of December 12, 2014 and May 28, 2015 are affirmed.

Donofrio, J., concurs

Robb, P. J., dissenting in part; see dissenting in part opinion

Robb, J., dissenting in part opinion

**{¶51}** I respectfully dissent in part from the decision reached by my colleagues. I agree with the resolution of Theresa's sole assignment of error. As to David and S.E.T.'s assignment of error, I would affirm the holding as it relates to the deed of the real estate, but as to the buildings and improvements to the real estate, I would remand the matter for further consideration.

**{¶52}** The "shop property" consists of two components. One is the real estate. I agree the trial court did not abuse its discretion in finding a purchase money resulting trust did not arise in favor of the corporation as to the real estate. The evidence did not clearly and convincingly demonstrate a purchase money resulting trust for the reasons expressed in paragraphs 45 and 46 of the opinion.

**{¶53}** However, as I see it, there are two portions to the "shop property" – the real estate and the improvements, i.e., the buildings constructed on the property. Theresa testified she did not contribute any money towards the construction of the buildings and she did not know if Doug or the corporation paid any money towards the construction of the buildings. Doug testified the improvements were paid by the corporation and provided a print out of the monies expended by S.E.T. for the construction of the buildings. His testimony also reflected that the buildings were used solely for the corporation.

**{¶54}** Although it is clear Doug and Theresa were intended to benefit from the real estate, it is not clear they were intended to benefit from the improvements to the property. At the June 12, 2007 meeting of S.E.T. directors and shareholders, a discussion about the corporation's need for additional space to store its equipment occurred. The first corporate resolution indicates the property was owned by Doug and Theresa. It provided, "That the Corporation is hereby authorized to construct a 7,500 square foot pre-engineered steel building on lands owned by Douglas J. Susany and Theresa Susany * * *, which was acquired from the Lowellville Rod & Gun Club, Inc." The second resolution provided the corporation was authorized to

enter into a "land-lease" with Doug and Theresa for an initial term of 25 years, with 5 year renewal options for a rental fee of $100 per month. The testimony at trial clearly indicated the buildings solely benefited the corporation. Neither the second resolution nor the trial testimony indicate Doug and Theresa were to benefit from the buildings, which cost approximately $200,000. If Doug and Theresa were intended to benefit from both the real estate and improvements, then higher lease payments may have been required and warranted.

{¶55} Admittedly, S.E.T. did not argue the real estate and buildings as separate assets in their appellate briefs; the argument was raised during oral argument. Regardless, considering the evidence, the trial court should have examined each of the assets in that manner. In examining them in that manner, based on equitable principles, S.E.T. was, at the least, entitled to compensation for the improvements to the property, which the evidence demonstrates was never intended to benefit Theresa.

{¶56} Accordingly, based on the above reasoning, I hold there is some merit with S.E.T.'s assignment of error, and as such, would remand the matter for further proceedings. For that reason, I dissent in part.